UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM K.V., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C23-193-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in determining that his drug or alcohol use ("DAA") was material and in assessing the medical opinions and evidence. (Dkt. # 13.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1968, has a high school education, and has worked in West Virginia coal mines as a miner, millwright, and electrician. AR at 103-07, 32. Plaintiff has not engaged in substantial gainful activity since February 3, 2018. *Id.* at 32.

ORDER - 1

On November 1, 2018, Plaintiff applied for both supplemental security income ("SSI") and disability insurance benefits ("DIB") benefits, and subsequently amended his alleged onset date to February 3, 2018. AR at 289-94, 295-301. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 121-30, 133-54. After the ALJ conducted a hearing on January 4, 2022, the ALJ issued a decision on January 26, 2022, finding Plaintiff not disabled. *Id.* at 15-33.

Because this case involves DAA, the ALJ completed two "rounds" of the five-step sequential analysis.[1] At step two, during both round one and round two, the ALJ found that Plaintiff has the following severe impairments: substance addiction disorder; affective disorder; anxiety disorder; post-traumatic stress disorder ("PTSD"); "chronic obstructive pulmonary disease (COPD) vs. bronchitis;" migraine headaches; hearing loss; status-post, left foot injury; status-post, right hand injury; and sleep disorder. AR at 18. During round one, the ALJ subsequently found that, considering the combined impact of Plaintiff's substance addiction disorder and his other impairments, Plaintiff's impairments met Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15

---

[1] In cases involving DAA, an ALJ is required to conduct a two-round or two-stage analysis prior to finding a claimant disabled. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). In the first round, the "ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction." *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) (interpreting 20 C.F.R. §§ 404.1535, 416.935); *see also* Social Security Ruling ("SSR") 13-2p, 2013 WL 621536, at *1 (Feb. 20, 2013). If, considering all of the claimant's medically determinable impairments, the ALJ determines that the claimant is disabled, and there is medical evidence showing DAA, then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled, *i.e.*, whether the claimant would still be found disabled if they stopped using drugs or alcohol. SSR 13-2p, 2013 WL 621536, at *6; 20 C.F.R. §§ 404.1535(b), 416.935(b).

During round two, the ALJ "project[s] the severity of the claimant's other impairment(s) in the absence of DAA)." SSR 13-2p, 2013 WL 621536, at *4, 7. In so doing, the ALJ "evaluate[s] which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling)." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

ORDER - 2

(trauma and stressor-related disorders), and that he was therefore disabled at round one, step three. AR at 19-20. In support, the ALJ found that Plaintiff possessed marked limitations in all four Paragraph B categories. *Id.* at 20.

However, during round two of the analysis, at which time the ALJ separated out Plaintiff's DAA from his other impairments, as required, the ALJ found that Plaintiff's DAA was indeed material because, absent the DAA, Plaintiff no longer satisfied Listings 12.04, 12.06, and 12.15 at round two, step three of the analysis. AR at 21-22. In support, the ALJ found that, absent the DAA, Plaintiff possessed only moderate limitations in all four Paragraph B categories. *Id.* The ALJ, therefore, proceeded to steps four and five of his round-two analysis. *Id.* at 22-33.

At round two, step four, the ALJ found that Plaintiff possessed an RFC for light work with some postural, manipulative, and environmental limitations. AR at 22. The ALJ limited Plaintiff to simple and routine instructions and tasks, no contact with the public, occasional contact with supervisors, and to work in the proximity of – but not in coordination with – coworkers. *Id.* at 22-23. Relying on the opinion of a vocational expert (VE) who testified that an individual with such an RFC could perform jobs existing in significant numbers in the economy, including deli slicer and routing clerk, the ALJ concluded at round two, step five that Plaintiff was not disabled. *Id.* at 33.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial

ORDER - 3

evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (citations omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in His DAA Materiality Determination

Plaintiff argues that the ALJ erred in finding that his DAA was material to his disability.[2] Absent any supporting record citations, Plaintiff contends that the ALJ's findings otherwise were not supported by substantial evidence, asserting that even if Plaintiff did "not have . . . acute, psychotic episodes requiring psychiatric hospitalizations in the absence of substance use, . . . he was not functioning well." (Dkt. # 13 at 5.) Plaintiff concedes that his psychiatric

---

[2] As discussed in more detail below, to a large degree, Plaintiff has merged his discussion of this issue with his discussion of the ALJ's evaluation of the medical opinions – when, in fact, the two are separate issues.

ORDER - 4

hospitalizations were linked to his drug use, but notes that he also "was not symptom free when he was clean and sober." (*Id.* at 12.) Again, absent any record citations, Plaintiff states that he lived on the streets because he did not get along well with others at homeless shelters, that he did not trust people, and that several treating medical providers "were all concerned about his mental health." (*Id.* at 6, 13) (asserting that when he was not abusing substances, he "struggled with less acute, but still debilitating symptoms of neurocognitive disorder, depression, anxiety, and PTSD that, combined with chronic pain, made it difficult for him to take care of himself, sustain concentration, interact with others, and handle stress"). Plaintiff argues that to the extent that the ALJ's materiality findings relied on Plaintiff's functioning in CORP, a highly therapeutic environment, such a setting is not equivalent to full-time work.[3] (*Id.* at 15.)

The Commissioner counters that the ALJ properly juxtaposed Plaintiff's mental functioning while using substances with periods of sobriety in determining that Plaintiff's DAA was material, noting the ALJ's numerous record citations in support of the ALJ's findings. (Dkt. # 19 at 4.) The Commissioner agrees that Plaintiff continued to experience symptoms when sober, but argues that the standard is not, as Plaintiff asserts, whether Plaintiff was "functioning well," but instead whether his DAA was a "contributing factor material" to the finding of disability. (*Id.* at 4.) The Commissioner further asserts that record citations regarding Plaintiff's debilitating symptoms while sober are "conspicuously absent" from Plaintiff's argument otherwise. (*Id.* at 8.) The Commissioner concedes that the CORP program was "a highly

---

[3] Plaintiff testified that, at the time of the January 2022 hearing, he was then voluntarily enrolled in a ninety-day residential treatment program called CORP that was run by Pioneer Human Services, at which he was being treated for his methamphetamine addiction. AR at 84-90; *see also id.* at 1820-78 (CORP records from December 2021). Plaintiff testified that CORP began in December 2021, and was scheduled to end March 2, 2022. *Id.* at 84-90. He stated that his days at CORP included class from 9:00 a.m. – 3:00 p.m., and then AA meetings in the evenings. *Id.* at 87-89. It is unclear from the record whether Plaintiff completed the CORP program.

ORDER - 5

structured, therapeutic setting," but notes that it was simply additional support for the ALJ's many other citations regarding Plaintiff's functioning during periods of sobriety. (*Id.* at 9.)

In reply, Plaintiff continues to reiterate many of the same arguments that he made in his opening brief, again with no record citations, and contends that the ALJ failed to "affirmatively identify evidence establishing that [he] would not be disabled in the absence of DAA," as required by the relevant social security ruling. (Dkt. # 20 at 3-4.) Plaintiff further contends that the ALJ found that his DAA was material "because he improperly rejected [Plaintiff's challenged medical opinions.]" (*Id.* at 2; *see also* dkt. # 13 at 18 (similarly arguing that the ALJ's rejection of the medical opinions undermined the ALJ's materiality finding)).

In determining whether a claimant's DAA is material, the test is whether the individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra*, 481 F.3d at 746-47. An ALJ's process for making the DAA materiality finding differs depending on whether the claimant's additional impairments are physical or mental. *See* SSR 13–2p(7), 2013 WL 621536, at *7. Social Security Ruling 13–2p provides that where a claimant has a co-occurring mental disorder(s), there must be "evidence in the case record that establishes that [the] claimant . . . would not be disabled in the absence of DAA" to support a DAA materiality determination. *Id.* at *9.

In making the determination, an ALJ "may consider medical judgments about the likely remaining medical findings and functional limitations the claimant would have in the absence of DAA)." SSR 13–2p(7), 2013 WL 621536, at *7. The ALJ, however, is not "permit[ted] to rely exclusively on medical expertise and the nature of a claimant's mental disorder" to support a finding of DAA materiality. *Id.* at *9. The claimant continues to have the burden of proof at the second stage of the disability analysis to prove that his substance use is not a material

ORDER - 6

contributing factor to his disability. *See Parra*, 481 F.3d at 745; SSR 13–2p, 2013 WL 621536, at *4, 7.

Plaintiff's argument that the ALJ erred in his materiality determination conflates the issue with Plaintiff's challenge to the ALJ's evaluation of the medical opinions, in essence, ignoring the actual stage of analysis during which the ALJ found that his DAA was material. Plaintiff mistakenly suggests that it was the ALJ's erroneous evaluation of the medical opinions that was responsible for what Plaintiff contends was also an erroneous evaluation of materiality. (*See* dkt. # 13 at 18.) However, Plaintiff overlooks the fact that the ALJ made the materiality determination during round two, step three of the sequential evaluation – as opposed to at round two, step four when the ALJ evaluated the medical opinions. *See* AR at 20-21, 25. It was at round two, step *three* that the ALJ concluded that Plaintiff possessed only moderate as opposed to marked Paragraph B limitations. *Id.* at 21-22.

In support of his materiality determination, the ALJ found that while Plaintiff often complained of memory problems, his medical records showed that he typically has "intact recent/remote memory as well as intact fund of knowledge" when he is not abusing substances. AR at 21 (citing *id.* at 1844, 1850, 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982). The ALJ further found that Plaintiff has only a moderate limitation interacting with others when his substance use is stopped, noting observations from providers regarding Plaintiff's "normal mood/affect and appropriate behaviors," and noting his ability to take classes and participate in group discussions during his participation in the CORP program and during AA meetings. AR at 21 (citing *id.* at 1844, 1850, 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982).

Additionally, the ALJ found that, in terms of his concentration, persistence, and pace, Plaintiff typically demonstrated "linear/goal-directed thought processes, full

ORDER - 7

alertness/orientation, normal concentration, and normal thought content when he is not abusing substances)." AR at 22 (citing *id.* at 1844, 1850, 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982). Finally, the ALJ noted that in terms of adapting and managing himself, Plaintiff was independent in his ADLs and able to attend classes at CORP and AA meetings when he was not abusing substances. *Id.* at 22 (citing *id.* at 76-113).

As noted, it is Plaintiff's burden to establish that his DAA was not material to his disability; yet, Plaintiff has failed to meaningfully address the ALJ's above findings, which supported the ALJ's materiality determination. In both his opening and reply briefs, Plaintiff makes conclusory arguments about what he contends the evidence shows, but fails to provide any record support for his assertions or in opposition to the ALJ's materiality findings. It is not the Court's job to manufacture support for Plaintiff's argument or to scour the record for support for Plaintiff's assertions. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Here, the ALJ's related findings and record citations provided substantial evidence in support of his materiality determination. AR at 21-22, 25 (citing *id.* at 1844, 1850, 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982). This includes the ALJ's citations to Plaintiff's periods of sobriety during his participation in the CORP program. *See id.* at 21-22, 25 (citing *id.* at 1844, 1850, 76-112).

In considering a period of sobriety, as the ALJ did in this case, SSR 13-2p notes that improvement of a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not entirely the cessation of substance use. 2013 WL 621536, at *12. Under SSR 13-2p, an ALJ needs evidence from "outside of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved, or

ORDER - 8

would improve, with abstinence." *Id.* at *13. Nevertheless, while evidence from a single hospitalization or intervention is insufficient in and of itself to establish that DAA is material, "a prolonged period of sobriety, even within the context of a highly structured environment" may nevertheless "prove instructive." *See Tyrone W. v. Saul*, 2020 WL 6363839, at *5 (D. Or. Oct. 28, 2020) (discussing SSR 13-2p, and rejecting the claimant's argument that the ALJ is not permitted to consider record evidence from a highly structured treatment setting).

Here, as the Commissioner accurately notes, the ALJ did not rely solely on evidence from Plaintiff's participation in the CORP program to assess the materiality of his DAA, but also relied on medical records from Plaintiff's treating psychiatrist, Dr. Forslund, and Plaintiff's treating nurse practitioner, Kimberly Bynum. AR at 21-22, 25 (citing *id.* at 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982). In those cited records, Drs. Forslund and NP Bynum noted that during periods of non-abuse, Plaintiff reported that he was doing well and sleeping well and was not experiencing psychotic symptoms; they also observed in mental status examination notes that Plaintiff demonstrated good judgment, was alert, possessed a normal mood and affect, and was pleasant, stable, interactive, and generally without anxiety, depression, stress, loss of interest, alcohol abuse, hallucinations, or suicidal thoughts. *See id.* at 1898, 1908-09, 1930, 1943, 1954, 1967-68, 1982. For these reasons, the ALJ did not err in his determination that Plaintiff's DAA was material to his disability.

      **B.**    **The ALJ Did Not Err in His Evaluation of the Medical Opinions**

Plaintiff also argues that the ALJ misevaluated several medical opinions regarding his mental impairments, and that the ALJ's erroneous rejection of several medical opinions undermined his materiality finding. (Dkt. # 13 at 18.) In so arguing, Plaintiff again mistakenly conflates the ALJ's round two, step four evaluation of the medical opinions with the materiality

findings, discussed above, that the ALJ made at round two, step three. As noted, at the time that the ALJ evaluated the medical opinions, the ALJ had already made the determination that Plaintiff's DAA was material to the disability finding at round two, step three. The ALJ, thus, was not determining materiality at the time he evaluated the medical opinions, but was instead determining Plaintiff's RFC based on his other impairments in the absence of DAA. *See* SSR 13-2p, 2013 WL 621536, at *4, 7; AR at 27 (noting that in reviewing the medical opinions, the ALJ was "determining [Plaintiff's] residual functional capacity during the periods when he is not actively abusing substances").

Accordingly, Plaintiff's attempt to unwind the ALJ's materiality findings based on the ALJ's evaluation of the medical opinions during his round two, step four RFC determination is misguided. A conclusion that the ALJ misevaluated any of the challenged medical opinions at round two, step four would not undermine the ALJ's materiality determination, which, for the reasons above, the Court has upheld. Instead, any error associated with the ALJ's evaluation of the challenged medical opinions at round two, step four would require remand for the ALJ to reconsider Plaintiff's RFC in the absence of DAA– not the DAA materiality determination itself.

The ALJ reviewed five medical opinions regarding Plaintiff's mental impairments, including: (1) a March 2019 opinion from examining DSHS psychologist, Dr. Phyllis Sanchez, AR at 589-96; (2) an April 2019 opinion from Plaintiff's treating physician, Dr. Craig Szela, *id.* at 1636-37; (3) an April 2019 opinion from examining DSHS psychologist, Dr. James Czysz, *id.* at 1645-49; (4) a December 2019 opinion from consulting state agency psychologist, Dr. Bruce Eather, *id.* at 138-43; and (5) a December 2021 opinion from Plaintiff's treating counselor at Sound Health, Cinnamon Winkler, SUDPT (substance use disorder professional trainee), and Sound Health supervisor, Christin Atienza, LICSW, SUDP, *id.* at 1650-57. The ALJ found all of

the opinions not persuasive with the exception of the opinion from consulting psychologist, Dr. Eather, whose opinion the ALJ adopted regarding Plaintiff's mental limitations. *Id.* at 30-32. Plaintiff challenges the ALJ's evaluation of the remaining four medical opinions, which the Court has addressed in turn.

### 1. Legal Standards

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### 2. Dr. Sanchez, Dr. Czysz, and Dr. Szela[4]

DSHS examining psychologist, Dr. Sanchez, interviewed Plaintiff and administered a mental status examination in March 2019. AR at 589. She noted that Plaintiff complained of depression, PTSD, and a learning disorder, and shared that he had "a history of opioid and depressant (benzodiazepine) abuse in the remote past." *Id.*; *see also id.* at 590 (noting that Plaintiff has a remote history of "CD, tranquilizers, and opioids," but that he currently only "uses pot once per week" and "last used painkillers years ago"). Dr. Sanchez diagnosed Plaintiff with PTSD, major depressive disorder, "CD history with current sporadic cannabis use, slow cognition with past LD history," and hearing loss. *Id.* at 590. She opined that Plaintiff possessed five marked limitations, and one severe limitation, and ultimately opined that Plaintiff was markedly limited by his mental impairments and symptoms. *Id.* at 591. Dr. Sanchez checked a box indicating that Plaintiff's limitations were not the result of a substance use disorder. *Id.*

---

[4] Because the ALJ discussed together these three medical opinions, providing identical persuasiveness findings, the Court addresses the opinions together as well.

ORDER - 11

1  Nevertheless, Dr. Sanchez observed that Plaintiff "was disheveled" with "pinpoint pupils and
2  slurred speech" at the time of the examination, and she recommended he be given a chemical
3  dependency assessment. *Id.*

4  Subsequently, in April 2019, another examining DSHS psychologist, Dr. Czysz,
5  reviewed Dr. Sanchez's evaluation along with additional medical records, interviewed and
6  examined Plaintiff, and administered a mental status examination. AR at 1645-49. Plaintiff
7  advised Dr. Czysz that he used to abuse opiates while working in West Virginia, but that he had
8  been abstinent for many years. *Id.* at 1646. Plaintiff also denied ever having used
9  methamphetamines. *Id.* Dr. Czysz diagnosed Plaintiff with unspecified depressive disorder,
10 PTSD, unspecified neurocognitive disorder, and unspecified opioid-related disorder in full
11 remission. *Id.* at 1647. He opined that Plaintiff possessed five marked limitations, two severe
12 limitations, and ultimately opined that Plaintiff was severely limited by his mental impairments
13 and symptoms. *Id.* at 1648. Like Dr. Sanchez, Dr. Czysz stated that Plaintiff's limitations were
14 not primarily the result of a substance use disorder. *Id.*

15 In April 2019, Plaintiff's primary care physician, Dr. Szela, opined in office visit notes
16 that he had "been concerned for [Plaintiff's] mental health" since he began treating Plaintiff in
17 December 2016. AR at 1636. He also opined that Plaintiff's mental health "represents significant
18 disability during this entire period," and that Plaintiff's "organization ability [was] in no way
19 compatible with finding a job at this time or the last two plus years since knowing this patient."
20 *Id.* at 1637.

21 The ALJ found that Dr. Sanchez's, Dr. Czysz's, and Dr. Szela's opinions were persuasive
22 only "to the extent that they reflect[ed] [Plaintiff's] mental functioning during periods of active
23 substance abuse, but not persuasive to the extent they reflect his mental functioning absent

substance abuse." AR at 31. The ALJ reasoned that while the opinions were supported by examinations and clinical observations, Drs. Sanchez, Czysz, and Szela also relied heavily on Plaintiff's self-reports. *Id.* at 30-31. The ALJ further found that the medical evidence showed that Plaintiff misrepresented his substance abuse to Drs. Sanchez, Czysz, and Szela, noting positive drug urine tests for methamphetamine use, admissions of methamphetamine use, and diagnoses of continuing methamphetamine abuse. *Id.* at 30 (citing *id.* at 588, 586, 2675, 2143, 564, 1072, 1075). Accordingly, the ALJ found the opinions lacked supportability to the extent that he considered them for the purpose of assessing Plaintiff's RFC in the absence of DAA. *Id.* at 30. The ALJ further found that, in assessing Plaintiff's RFC in the absence of DAA, the opinions lacked consistency with Plaintiff's medical records, which the ALJ found demonstrated that he displayed "much more stable mental functioning, characterized by normal mood/affect, cooperative behavior, full alertness/orientation, intact recent/remote memory, normal concentration, logical and linear thought processes, and no suicidal/homicidal ideation, paranoia, or auditory/visual hallucinations" when he was not abusing substances. *Id.* at 31 (citing *id.* at 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982).

Plaintiff argues that the ALJ's supportability findings are contradictory because the ALJ noted both that the opinions were supported by examination findings and by Plaintiff's self-reports. (Dkt. # 13 at 13.) However, there is no contradiction. While Drs. Sanchez and Czysz indeed conducted their own examinations, there is no suggestion that they urine or drug-tested Plaintiff in conjunction with their mental status examinations. As the ALJ notes, Drs. Sanchez and Czysz relied on Plaintiff's misrepresentations denying recent substance use. *See* AR at 30.

Notably, Plaintiff does not deny that he misrepresented his substance use – and, specifically, his methamphetamine use – to Drs. Sanchez, Czysz, and Szela. (Dkt. # 13 at 13-15);

ORDER - 13

*see also* AR at 85 (testifying in January 2022 that the last time he used methamphetamine was at the end of November 2021). Instead, Plaintiff suggests that Drs. Sanchez, Czysz, and Szela in fact knew or should have known of his recent or current substance abuse and should have ignored his self-reports otherwise – including his explicit denials of such abuse. (Dkt. # 13 at 13-14.) In support, Plaintiff notes that Dr. Sanchez observed that he possessed "pinpoint pupils and slurred speech." However, Dr. Sanchez nevertheless based her finding of "remote" substance abuse on Plaintiff's self-report, upon which she then, in turn, based her opined functional capacity limitations. AR at 589-90, 592. Moreover, Dr. Sanchez noted that the issue of substance use "should be reviewed" "given [Plaintiff's] presentation," after which another DSHS psychologist, Dr. Czysz, examined and interviewed Plaintiff. *Id.* at 591, 1645. Like Dr. Sanchez, Plaintiff continued to deny recent substance use at his examination by Dr. Czysz, and Plaintiff has not explained how Dr. Czysz should have known otherwise. *Id.* at 1645-46.

Finally, as for Dr. Szela, Plaintiff cites to various treatment notes to suggest that Dr. Szela was aware of his substance abuse. (Dkt. # 13 at 14.) However, none of Plaintiff's cited record evidence references Plaintiff's methamphetamine use, but instead simply notes Plaintiff's mental impairments and his use of prescription medications for sleep, anxiety, and depression. (*See* dkt. # 13 at 14 (citing AR at 632, 640, 631-38, 618, 622-24, 612, 602, 804-06, 792, 816, 795, 819)).

Based on the above, the Court finds that the ALJ's supportability findings regarding Drs. Szela's, Czysz's, and Sanchez's opinions were supported by substantial evidence. Additionally, the ALJ's consistency findings, which were based on evidence from periods of sobriety, including records from Plaintiff's treating psychiatrist during his participation in the CORP program, and additional medical records from another treating psychiatrist and Plaintiff's

ORDER - 14

treating nurse practitioner, were also supported by substantial evidence. AR 31 (citing *id.* at 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982). Accordingly, the ALJ did not err in his evaluation of the above medical opinions.

### 3. *Counselor Cinnamon Winkler and Social Worker Christina Atienza*

Ms. Winkler, a substance use professional trainee, counseled Plaintiff regarding his substance use disorder during 2021, at which time Plaintiff participated in a residential treatment plan. AR at 1864-74, 2011-17. In March 2021, during an intake interview and mental status examination, Plaintiff advised Ms. Winkler that he sought inpatient treatment. *Id.* at 1864. Ms. Winkler found that Plaintiff satisfied the criteria for severe methamphetamine disorder, and recommended residential treatment. *Id.* at 1873-74, 1881-92 (duplicate). During that treatment, Plaintiff also suffered from continued opioid or heroin use disorder. *Id.* at 2011, 2013.

In December 2021, treating counselor Winkler, along with supervising social worker, Ms. Atienza, completed an assessment of Plaintiff's mental functioning, in which they noted that Plaintiff suffered from schizophrenia spectrum/psychotic disorders and depressive disorder. AR at 1650. They opined that Plaintiff possessed marked impairments in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. *Id.* at 1651-54. Ms. Winkler and Ms. Atienza opined that Plaintiff possessed only moderate impairments in interacting with others and in adapting and managing himself. *Id.* at 1652-55. In response to a form questionnaire regarding whether the above limitations would continue to exist if Plaintiff was sober for sixty or more days, Ms. Winkler and Ms. Atienza noted that while Plaintiff was in residential treatment, he "continued to struggle with concentrat[ion]" and "had difficulty getting along with and connection to other people, and continued to be bothered/distracted/disrupted by internal stimuli." *Id.* at 1657.

1    The ALJ found that the opinion was not persuasive, questioning the supportability of the opinion to the extent that it "downplay[ed] the effect of substance abuse on [Plaintiff's mental] symptoms" in light of medical evidence that demonstrated that Plaintiff's "psychotic disorder is related to his methamphetamine use and his PTSD and depressive disorder are exacerbated by his substance use." AR at 31 (citing *id.* at 2034, 2038, 2042, 2050). In terms of consistency, the ALJ found that "while [the] opinion may reflect [Plaintiff's] functioning during periods when he is actively abusing methamphetamine or heroin, it is inconsistent with his much more stable functioning during periods when he is not abusing such substances." *Id.* at 31-32 (citing *id.* at 1844, 1850, 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982). Finally, the ALJ found that because Ms. Winkler and Ms. Atienza were not "acceptable medical sources," consulting state agency physician, Dr. Eather's opinion was more persuasive regarding Plaintiff's function absent substance abuse. *Id.* at 32.

    Plaintiff argues that the ALJ erred in finding that Dr. Eather's opinion was more persuasive because he was an "acceptable medical source," and contends that the ALJ failed to take into account Ms. Winkler's superior understanding of Plaintiff's day-to-day functioning. (Dkt. # 13 at 17-18.) The Commissioner counters that that the ALJ was entitled to distinguish between Dr. Eather's and Ms. Winkler's opinions on this basis, suggesting that it constituted consideration of Dr. Eather's "specialization," as permitted by the pertinent regulations. (Dkt. # 19 at 11.)

    The Court agrees that this reason was an improper basis for discounting the opinion, but not for the reasons stated by Plaintiff. The 2017 revised regulations that apply to this case amended the prior regulations regarding the evaluation of medical opinions such that all medical sources – not just acceptable medical sources – can provide evidence that will be considered as

medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017). Furthermore, under the revised regulations, an ALJ is required to consider the persuasiveness of each medical opinion, regardless of whether the medical source is an acceptable medical source. 20 C.F.R. § 404.1520c(c); *see also* 82 Fed. Reg. 5,844 (new regulations rescind SSR 06-03p regarding consideration of evidence from sources who are not acceptable medical sources).

The Court acknowledges but rejects the Commissioner's attempt to recast the ALJ's related finding as one regarding "specialization." (*See* dkt. # 19 at 11-12.) Here, the ALJ made no mention of Dr. Eather's specialty, and the Court notes that Ms. Winkler's specialization was itself in the field of substance abuse. *See* AR at 1650. Accordingly, the Commissioner's *post hoc* attempt to provide support for the ALJ's erroneous finding is rejected. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely").

Nevertheless, the Court finds that the ALJ's supportability and consistency findings were supported by substantial evidence. Regarding supportability, the ALJ supported with substantial evidence his finding that Ms. Winkler and Ms. Atienza unreasonably downplayed the role of Plaintiff's substance abuse. *See* AR at 31 (citing *id.* at 2034, 2038, 2042, 2050). Additionally, the ALJ's consistency findings, which were based on evidence from periods of Plaintiff's sobriety, including records from Plaintiff's treating psychiatrist during his participation in the CORP program, and additional medical records from another treating psychiatrist and Plaintiff's treating nurse practitioner, were also supported by substantial evidence. AR at 31 (citing *id.* at 1898, 1908-09, 1930, 1943, 1954, 1960-61, 1967-68, 1982).

For these reasons, the ALJ did not err in his evaluation of Ms. Winkler's and Ms. Atienza's medical opinion.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this case is **DISMISSED** with prejudice.

Dated this 5th day of September, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge